UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HOUSE OF RAEFORD FARMS OF LOUISIANA, L.L.C. | CIVIL ACTION NO. 24-0471 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| GULF STATES COLD STORAGE CO. | MAGISTRATE JUDGE MCCLUSKY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss (Record Document 38) filed by Defendant Gulf States Cold Storage Co. ("Gulf States"). Gulf States moves under Rule 12(b)(6) to dismiss all claims asserted by Plaintiff House of Raeford Farms of Louisiana, L.L.C. ("House of Raeford"). House of Raeford opposed (Record Document 47), and Gulf States replied (Record Document 52). For the reasons explained below, the Motion is **DENIED.**

## FACTUAL & PROCEDURAL BACKGROUND

House of Raeford is a poultry producer operating a processing facility in Arcadia, Louisiana. See Record Document 1 at 3. Since 2001, House of Raeford has relied on off-site cold storage to support its Louisiana production operations. See id. Initially, its poultry products were stored at a Shreveport warehouse owned by Pilgrim's Pride Corporation (the "Shreveport Warehouse"). See id. Gulf States acquired the warehouse in 2006, and the parties began a business relationship. See id. at 4.

After the acquisition, Gulf States registered to do business in Louisiana and employed Louisiana personnel, and House of Raeford continued storing product at the Shreveport Warehouse. See id. In addition to storing its products at the Shreveport Warehouse, House of Raeford also stored products at Gulf States' Dothan, Alabama

warehouse ("Dothan Warehouse"). See id. The parties coordinated logistics, shipping, and storage requirements on a regular basis, and Gulf States represented that it would maintain freezer temperatures consistent with House of Raeford's product specifications. See id. at 5. In 2023, hundreds of thousands of pounds of frozen chicken produced in Louisiana were stored at the Dothan Warehouse. See id. at 7.

According to House of Raeford, on August 16, 2023, Gulf States' Vice President of Operations, Terry Sledd (Sledd), called House of Raeford's Arcadia office to report that a storm-related power outage had compromised some of the stored product. See id. Sledd stated that he discovered that the products had thawed on August 11, 2023, or August 12, 2023. See id. To date, Gulf States has not provided the exact dates or duration of the outage and has not produced freezer temperature logs or shipping records from the week of August 16, 2023. See id.

When House of Raeford inspected the warehouse in September 2023, its employees allegedly discovered that there was widespread thawing and refreezing and that no House of Raeford products were salvageable. See id. at 9. Additionally, Gulf States employees reportedly disclosed that freezer issues had been occurring for months and had been repeatedly reported to management. See id. House of Raeford alleges that the Dothan Warehouse freezers reached temperatures as high as 25°F in July 2023 and that Gulf States continued shipping compromised product to customers after learning of the issue. See id. at 9–10. House of Raeford ultimately disposed of approximately 860,680 pounds of product and incurred additional losses in replacement orders and freight costs. See id. at 10. In total, House of Raeford alleges it incurred damages of at least $2,178,702.00. See id. at 11.

House of Raeford filed this suit asserting multiple causes of action, including breach of contract, negligence, gross negligence, a violation of the Louisiana Uniform Warehouse Receipts Act ("LUWRA"), fraud, negligent misrepresentation, and a violation of the Louisiana Unfair Trade Practices Act ("LUTPA"). See id. at 12–24. Gulf States filed a Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2). See Record Document 17. The Court granted the Motion to Dismiss for the breach of contract claim and denied the motion on all non-contractual claims. See Record Document 27. Thereafter, Gulf States filed its Answer on May 5, 2025. See Record Document 35. In the Answer, Gulf States only addresses the LUWRA, negligence, and gross negligence claims. See id. at 11–15. For the remaining claims, the Answer states that they are subject to a Motion to Dismiss and do not require an answer. See id. at 15. On May 15, 2025, Gulf States filed a Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6). See Record Document 38. House of Raeford opposed (Record Document 47), and Gulf States replied (Record Document 52).

**LAW AND ANALYSIS**

I.    **Negligence and Negligent Misrepresentation**

The remaining causes of action for this Court to consider after its prior memorandum ruling on a Motion to Dismiss (Record Document 27) are negligence, gross negligence, a LUWRA violation, fraud, negligent misrepresentation, and a LUTPA violation. See id. at 12–24. In its Motion to Dismiss (Record Document 38), Gulf States argues that the Complaint should be dismissed in its entirety. See Record Document 38 at 2. However, Gulf States' motion does not substantively challenge or brief two causes of action that appear in the Complaint: negligence and negligent misrepresentation. See

3

Record Document 38-1. Because no argument was presented on these two claims, the Court does not consider them as part of the present motion and necessarily does not dismiss them, notwithstanding Gulf States' request for dismissal of the entire suit. Moreover, although Gulf States attempts in its Reply to argue that the negligent misrepresentation claim fails for lack of an alleged breach of duty, new arguments raised in a reply brief are waived and cannot serve as a basis for dismissal. See Record Document 52 at 3; see also Allen v. Hays, 65 F.4th 736, 746 (5th Cir. 2023). Therefore, the Court treats both claims as outside the scope of this motion.

> II.      **Arguments Regarding Rules 12(b) & 12(c)**

Next, the Court addresses the procedural posture of Gulf States' motion. Gulf States filed an Answer (Record Document 35) before filing the present Motion to Dismiss (Record Document 38). Under Rule 12(b), a motion asserting a failure to state a claim must be filed before a responsive pleading. Once an answer is filed, the pleadings are closed, and any later challenge to the sufficiency of the complaint must proceed under Rule 12(c). See Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999). Thus, House of Raeford's Opposition (Record Document 47) treats the present motion as a motion for judgment on the pleadings.

Gulf States responds that it answered only the negligence claim in Count II and thus did not waive its right to file a Rule 12(b)(6) motion for the remaining claims. See Record Document 52 at 2–3. The Court cannot find any Fifth Circuit support for the idea of filing a partial answer and maintaining eligibility to file a Rule 12(b)(6) motion as to the claims not answered. Additionally, Rule 12(b)(6) and Rule 12(c) apply the same legal

4

standard, so the Court fails to understand why this is a point of contention between the parties. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007).

In both a Rule 12(b)(6) motion and a Rule 12(c) motion, the "central issue is whether in the light most favorable to the plaintiff, the complaint states a valid claim for relief." See id. Therefore, the Court analyzes the motion under the Rule 12(c) standard but will continue to refer to the motion as a "Motion to Dismiss" for clarity and consistency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[T]he Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." Thomas v. Wright, 2025 WL 946977, at *2 (W.D. La. 2025). With these legal standards in mind, the Court addresses the remaining issues below.

### III.     Choice of Law Arguments

Gulf States contends that several of House of Raeford's claims fail because Alabama law applies rather than Louisiana law. The choice of law arguments are only directed to the LUWRA, LUTPA, and gross negligence claims. See Record Document 38-1 at 3–8. Gulf States does not raise a choice of law challenge to the negligence, negligent misrepresentation, or fraud claims, so the Court does not consider choice of law as to those causes of action. Gulf States argues that the LUTPA and LUWRA claims fail because such claims would be governed by Alabama law under La. C.C. art. 3543. See Record Document 38-1 at 3–8. Moreover, Gulf States contends that Alabama law applies to the gross negligence claim but that House of Raeford has failed to state a claim for gross negligence under both Louisiana and Alabama law. See id. at 4.

5

A federal court sitting in diversity applies state substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Under Klaxon Co. v. Stentor Electric Manufacturing Co., a federal court must apply the choice of law rules of the state in which it sits. See 313 U.S. 487 (1941). Accordingly, this Court applies the choice of law provisions contained in the Louisiana Civil Code.

Article 3515 states that the governing law is "the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. C.C. art. 3515. This article instructs courts to evaluate 1) each state's relationship to the parties and the dispute and 2) the policies and needs of the interstate system. See id. Louisiana's choice of law rule for delictual claims states that the applicable law is the law of the state whose policies would be most seriously impaired when considering:

> (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

La. C.C. art. 3542.

Gulf States primarily relies on La. C.C. art. 3543, which governs cases concerning issues of conduct and safety. Article 3543 states that the governing law is the law of the state where the conduct that caused the injury occurred "if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct." Article 3543 continues to explain that "[i]n all other cases, those issues are governed by the law of the state in which the injury occurred, provided that the person whose conduct caused the injury should have foreseen its occurrence in that state." Gulf States contends that La. C.C. art. 3543 requires Alabama law to govern the LUWRA, LUTPA, and gross

6

negligence claims because the freezer malfunction, temperature deviations, and alleged mishandling of product occurred in Alabama. See Record Document 38-1 at 3–8. However, the Court does not find that La. C.C. art. 3543 applies to these claims.

Article 3543 is an exception to the general tort choice of law rule in La. C.C. art. 3542. It applies only to issues pertaining to standards of conduct and safety. See La. C.C. art. 3543. This means that application of Article 3543 is limited to circumstances in which the legal question concerns the safety-related conduct of the defendant at the moment of the injurious act. In Babin v. Caddo East Estates I, Ltd., the Eastern District of Louisiana explained that the "standards of conduct and safety" rule only applies in specific situations. 496 B.R. 804, 809 (E.D. La. 2013). The court articulated that "[s]tandards of conduct and safety rules involve issues like strict liability, the appropriate standard of care, statutory health and safety provisions, and the like." Id.

House of Raeford's claims of commercial and economic loss under LUWRA, LUTPA, and gross negligence do not implicate strict liability, statutory safety mandates, public health obligations, or other safety-based conduct regimes of the type contemplated in La. C.C. art. 3543. Rather, these claims arise from alleged commercial mismanagement, misrepresentations, and economic harm suffered by a Louisiana business, which fall within the general delictual choice of law framework of La. C.C. art. 3542. Accordingly, the Court concludes that La. C.C. art. 3543 does not govern the present claims.

Because the Court has determined that La. C.C. art. 3542 is the applicable choice of law rule, the Court now addresses which state's law governs this dispute. Article 3542

directs the Court to apply "the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." The factors to consider are:

> (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

La. C.C. art. 3542.

    a. <u>Louisiana Contacts</u>

Louisiana has substantial contacts with, and interests in, this dispute. House of Raeford is a Louisiana limited liability company with its principal place of business in Arcadia, Louisiana. <u>See</u> Record Document 1 at ¶¶ 1, 12. House of Raeford's poultry operations are based in Louisiana. <u>See id.</u> at ¶¶ 12, 14. The parties' business relationship began through the Shreveport Warehouse. <u>See id.</u> at ¶ 18. The Complaint alleges that the products shipped to Gulf States' warehouses were created in, and shipped from, Louisiana. <u>See id.</u> at ¶ 26. The complaint further alleges that Gulf States coordinated daily with House of Raeford's Louisiana operations regarding shipments into and out of the relevant warehouses. <u>See id.</u> at ¶¶ 23–24.

Louisiana also has a strong interest based on the longstanding relationship between the parties in this state considering House of Raeford is based in Louisiana. <u>See id.</u> at ¶¶ 1, 12. Additionally, when Gulf States purchased the Shreveport Warehouse, it established a physical presence in Louisiana, registered with the Louisiana Secretary of State, maintained a registered office and principal business establishment in Louisiana, and employed Louisiana residents while paying Louisiana taxes. <u>See id.</u> at ¶¶ 17–19. The Complaint alleges that the economic and commercial losses from the spoilage of product

were borne by House of Raeford's Louisiana operations. See id. at ¶¶ 56–58. These allegations, which the Court must accept as true at this stage, support the conclusion that the primary injury was sustained in Louisiana by a Louisiana business.

   b. Alabama Contacts

Alabama also has contacts with the dispute. The Dothan Warehouse at issue is located in Dothan, Alabama, which is where the freezer allegedly malfunctioned and caused temperature deviations that affected the stored product. See id. at ¶¶ 21, 38–40. The Complaint alleges that Gulf States' employees at the Dothan Warehouse discovered temperature problems in the freezers, that freezer issues had been ongoing for several months, and that the freezer temperature was approximately 25°F as of July 14, 2023. See id. at ¶¶ 46–48. The physical deterioration of the product (thawing and refreezing) rendering the meat unfit for consumption also occurred in Alabama. See id. at ¶¶ 44–51. Alabama has an interest in regulating the operation of cold-storage facilities within its borders and in ensuring that businesses operating warehouses in Alabama comply with Alabama law in their handling of goods.

   c. Application of Article 3542 Factors

First, the Court considers the place of injury and the place of conduct. See La. C.C. art. 3542. As explained above, the alleged conduct occurred at the Dothan Warehouse in Alabama. See Record Document 1 at ¶ 21. The Complaint alleges that the injury (being economic and commercial loss) was sustained in Louisiana. See id. at ¶¶ 56–58. Additionally, the alleged misrepresentations and omissions occurred through communications directed into Louisiana, including the August 16, 2023, call from Gulf States' Vice President of Operations to a House of Raeford representative in Arcadia,

Louisiana, and subsequent communications in which Gulf States allegedly failed to disclose the extent and duration of the freezer issues. See id. at ¶¶ 38–43. Thus, while Alabama is the place of the physical storage conduct, Louisiana is the place of the economic injury and a substantial part of the alleged tortious communications.

Next, the Court considers the places of business. See La. C.C. art. 3542. House of Raeford is a Louisiana limited liability company with its principal place of business in Louisiana. See Record Document 1 at ¶ 1. Gulf States is a Georgia corporation with its principal place of business in Georgia, but it has historically maintained significant operations in Louisiana. See id. at ¶ 3. These contacts include owning and operating the Shreveport warehouse, a registered office, and a principal business establishment in Louisiana, and employing Louisiana residents and paying Louisiana taxes for many years. See id. at ¶¶ 16–19. Although the Dothan Warehouse is in Alabama, neither party is domiciled there. Alabama's interest is therefore limited to the regulation of facilities within its borders, whereas Louisiana's interest derives from protecting a Louisiana business from economic losses felt in Louisiana. When considering where the relationship between the parties is centered, the clear answer is Louisiana.

Article 3542 also requires consideration of the policies underlying La. C.C. art. 3515, including the needs of the interstate system and the policies of deterring wrongful conduct and repairing the consequences of injurious acts. Louisiana has a strong policy interest in protecting its resident businesses from economic harm and from unfair and deceptive practices directed at them, as reflected in statutes like LUWRA and LUTPA. The alleged injury here (the loss of product, replacement costs, freight costs, and the lost profit) was borne by a Louisiana company and allegedly affected its Louisiana-based

operations and customer relationships. See Record Document 1 ¶¶ 51–53, 56–58. Applying Louisiana law furthers Louisiana's policies of compensating its businesses for injuries and deterring wrongful conduct directed at them.

By contrast, Alabama has an interest in regulating the operations of warehouses within its territory and in ensuring that businesses operating those facilities comply with appropriate standards of care. That interest is real, but in this case, Louisiana has the stronger interest in compensating a Louisiana business for economic injury and in enforcing Louisiana's statutory schemes designed to regulate commercial practices affecting Louisiana businesses. Furthermore, neither party is an Alabama domiciliary, and the alleged wrongful communications and economic consequences extend into Louisiana rather than being confined to Alabama.

Based on the above contacts and policy considerations under La. C.C. art. 3542, the Court concludes that Louisiana is the state whose policies would be most seriously impaired if its law were not applied to the LUWRA, LUTPA, and gross negligence claims. Accordingly, all claims are governed by Louisiana law and will be addressed below using the appropriate legal standards.

### IV. LUWRA

House of Raeford's Second Cause of Action asserts that Gulf States is liable under LUWRA. See Record Document 1 at 15; see also La. R.S. 10:7-201, *et seq*. House of Raeford alleges that Gulf States is liable for failing to exercise the care of a reasonably careful warehouseman with respect to more than 800,000 pounds of frozen poultry stored at the Dothan Warehouse. See Record Document 1 ¶¶ 76–83. The Complaint alleges that Gulf States agreed to maintain the product at continuous deep-freeze temperatures,

that the goods were returned in an unsalvageable condition, and that the damage resulted from Gulf States' failure to maintain proper temperatures and timely notify House of Raeford of ongoing freezer issues. See id.

Gulf States' only argument for dismissal of the LUWRA claim is that Alabama law applies. See Record Document 38-1 at 3. As explained above, the Court has determined that Louisiana law governs the delictual claims at issue, including the LUWRA claim. Therefore, accepting House of Raeford's claims as true, it has plausibly alleged that Gulf States failed to exercise the care required under LUWRA. See La. R.S. 10:7-201, *et seq.* Accordingly, Gulf States' motion to dismiss the LUWRA claim is **DENIED**.

### V. Gross Negligence

House of Raeford also alleges that Gulf States' conduct constitutes gross negligence. See Record Document 1 at ¶¶ 83–89. However, Gulf States argues that the Complaint's allegations do not rise to the level of gross negligence (or to Alabama's analogous wantonness standard). See Record Document 38-1 at 4–6. As discussed above, Louisiana law governs. Under Louisiana law, gross negligence has been described as the "want of even slight care and diligence" and conduct that amounts to an "entire absence of care" showing an "utter disregard … of the rights of others." Rabalais v. Nash, 952 So. 2d 653, 658 (La. 2007). Gross negligence is the "want of diligence which even careless men are accustomed to exercise." Id.

Viewing the facts in the light most favorable to House of Raeford, the Complaint plausibly alleges conduct that could constitute gross negligence under Louisiana law. The Complaint asserts that Gulf States failed to take even minimal precautions to prevent or mitigate freezer failures, allowed temperatures to rise to approximately 25°F in July 2023,

failed to implement adequate backup plans for power, failed to timely notify House of Raeford of ongoing freezer issues, and continued shipping damaged product after learning of the problem. See id. at ¶¶ 38–48, 84–89. These allegations, if proven, could demonstrate a want of even slight care and an utter disregard for House of Raeford's interests. Accordingly, Gulf States' motion to dismiss the gross negligence claim is **DENIED**.

## VI. Fraud

House of Raeford next alleges that Gulf States committed fraud by knowingly concealing the duration and extent of the freezer failures at the Dothan Warehouse, misrepresenting when it first became aware of the problem, and falsely implying that the damage stemmed from a brief, storm-related outage rather than ongoing temperature deviations. See Record Document 1 ¶¶ 92–114. Gulf States argues that House of Raeford has not met Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements for fraud.

Rule 9(b) requires a plaintiff to plead the "who, what, when, where, and how" of the alleged fraud with particularity. Williams v. WMX Techs., Inc., 112 F.3d 175, 179 (5th Cir. 1997). However, the Fifth Circuit has repeatedly held that Rule 9(b) is applied with some flexibility. See U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009). Additionally, "[f]raud may be pleaded on information and belief when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge …." Adrian v. Regents of U. of California, 2002 WL 35646125, at *2 (W.D. La. 2002). However, "the factual basis for the pleader's information and belief must be articulated." Id.

House of Raeford has alleged specific facts that satisfy Rule 9(b). According to the Complaint, on August 16, 2023, Sledd with Gulf States called House of Raeford's Arcadia office and represented that a recent storm-related power outage had caused some of the product to thaw and that he discovered the issue only on August 11 or 12, 2023. See Record Document 1 at ¶¶ 38–40. House of Raeford alleges that this statement was false because Gulf States employees later disclosed that freezer issues had been occurring "for months" and had been repeatedly reported to management. See id. at ¶¶ 46–47. House of Raeford further alleges that Gulf States intentionally omitted material facts by failing to produce freezer temperature logs, failing to identify the precise dates of the failures, and continuing to ship compromised product after learning of the thawing. See id. at ¶¶ 42–43. These allegations specify the speaker (Sledd), the date and manner of the misrepresentation (the August 16 phone call), the content of the misrepresentation (a recent storm outage versus prolonged freezer failures), and the resulting harm (damage to more than 800,000 pounds of product). See Record Document 1.

These allegations satisfy Rule 9(b). They specify the who, what, when, where, and how of the alleged fraudulent conduct, and they outline the precise misrepresentations and omissions forming the basis of the claim. Because the Complaint sufficiently alleges the circumstances constituting fraud with particularity, Gulf States' Motion to Dismiss the fraud claim is **DENIED**.

VII.   **LUTPA**

House of Raeford asserts a claim under LUTPA (La. R.S. 51:1401, *et seq.*), alleging that Gulf States engaged in unfair and deceptive practices by concealing and misrepresenting the freezer malfunctions and damage to House of Raeford's product and

withholding critical information necessary for House of Raeford to protect its goods. See Record Document 1 at ¶¶ 101–109.

    a. Choice of Law

Gulf States argues that the LUTPA claim must be dismissed because Alabama law applies, and Alabama does not recognize a private cause of action analogous to LUTPA. See Record Document 38-1 at 7–8. As explained above, Louisiana law governs this claim. Accordingly, Gulf States' choice of law argument provides no basis for dismissal.

    b. Prescription

Gulf States next argues that the LUTPA claim is prescribed. See id. at 8. LUTPA has a one-year prescriptive period that begins to run "from the time of the transaction or act which gave rise to this right of action." La. R.S. 51:1409(E). House of Raeford alleges that it first learned of the freezer problems on August 16, 2023, when Sledd reported a recent storm-related outage and limited thawing. See Record Document 1 at ¶¶ 38–40. House of Raeford further alleges that it did not discover the full extent of the freezer failures, and Gulf States' alleged concealment, until its on-site inspection in September 2023, when employees disclosed that temperature issues had been occurring for months. See id. at ¶¶ 44–48. The earliest date of a freezer temperature variation in the Complaint is July 14, 2023. See id. at ¶ 48. Suit was filed on April 5, 2024, well within one year of all dates listed in the Complaint.

Even if there are some acts that occurred prior to April 5, 2023, the doctrine of *contra non valentem* applies to those acts. Under Louisiana law, prescription is suspended when the defendant has done some act to prevent the plaintiff from availing himself of his cause of action. See Plaquemines Parish Comm'n Council v. Delta Dev.

15

Co., 502 So.2d 1034, 1054–56 (La. 1987); see also Jenkins v. Starns, 85 So. 3d 612, 623 (La. 2012). The Complaint alleges that Gulf States concealed temperature deviations, withheld freezer logs, misrepresented when it first discovered the problem, and continued shipping compromised product—all facts peculiarly within Gulf States' knowledge. See Record Document 1 ¶¶ 38–48. If the freezers were malfunctioning before April 5, 2023, then House of Raeford had no way of knowing due to Gulf States alleged concealment. These allegations, accepted as true, support application of *contra non valentem*. Accordingly, Gulf States' Motion to Dismiss the LUTPA claim is **DENIED**.

## CONCLUSION

For the reasons explained above, the Court concludes that the Motion is **DENIED** in its entirety.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 17th day of December, 2025.

S. MAURICE HICKS, JR.<br>
UNITED STATES DISTRICT JUDGE